UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID **wayne.smithrose** **(Tony Williams)** THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | Case No. ___1:20-mj-00086-JCN___<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Justin Blais, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with certain Facebook user accounts that are stored at premises owned, maintained, controlled, or operated by Facebook, Inc., ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A.

2.     I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I am a special agent for the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) and have been so employed since July 16, 2017. Prior to my employment with ATF, I served as a police officer for the town of Farmington, Maine for a period of four years. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ATF National Academy. My formal training included investigation of firearms and narcotics related offenses, among other crimes.

3. In the course of my law enforcement training and experience, I have conducted or participated in, among other things, surveillance, undercover transactions, debriefings of informants and confidential sources, and reviews of taped conversations relating to firearms and narcotics trafficking. I have assisted in a number of other investigations. I have drafted a number of firearm related search and arrest warrants and have assisted in the execution of numerous search and arrest warrants in which firearms, controlled substances, drug paraphernalia, and other contraband were found. Through my training and experience, I have become familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of firearms and narcotics.

4. Based on my training and experience, I am familiar with the methods of operation employed by firearms and narcotics traffickers. I am aware that firearms and narcotics traffickers commonly use cellular telephones in furtherance of their trafficking activities and frequently change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that some firearms and narcotics traffickers utilize other means of electronic communication – including the Facebook messenger application – in support of their trafficking. I am also aware that firearms and narcotics traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to further prevent detection.

5. The facts in this affidavit come from my personal observations, my training and experience, phone analysis, and information obtained from other agents and witnesses. As discussed below, the results of my investigation have revealed that there is probable cause to believe that Wayne Smith is involved in narcotics and firearms trafficking activity, specifically, violations of Title 21, United States Code, Sections 841(a)(1) (controlled substance offenses) and

846 (conspiracy to commit same), and Title 18, United States Code, Section 922, et seq. (firearms offenses) and Title 18, United States Code, Section 371 (conspiracy). In addition, there is evidence that he is using a Facebook account with the user ID **wayne.smithrose (Tony Williams) )** and evidence of these offenses is on the computer systems in the control of Facebook.

6. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is the U.S. District Court for the District of Maine, a district court of the United States that has jurisdiction over the offenses being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

### THE TARGET FACEBOOK ACCOUNT

The target Facebook account/profile is assigned URL https://www.facebook.com/wayne.smithrose. I have observed the publicly available portions of this account and observed photographs of the person I recognize as Wayne Smith.

### PROBABLE CAUSE

7. On November 15, 2019, Bangor Police Department (BPD) was called by a property owner to 40 Second Street, Room 3, Bangor, Maine because Wayne SMITH was reported as being disorderly. BPD arrived and SMITH was not present. SMITH had abandoned his room telling the owner that he would not return once he heard police had been contacted. The Second Street address is a "boarding house" where tenants are able to pay for rooms on a daily basis. BPD found twelve (12) empty gun boxes left in the abandoned apartment of Wayne SMITH.

8. I examined the gun boxes and found that one of the firearms listed on the boxes was purchased a short period before the boxes were found in SMITH's abandoned room by

police. The firearm was purchased by a Sarah HICKS at Maine Military Supply on November 9, 2019, six (6) days prior to BPD finding the gun box.

9. I reviewed the security footage from November 9, 2019 at Maine Military Supply and noted that HICKS was with three (3) other males while she was in the store, the other males chose what gun she purchased, the cash used to purchase the firearm did not come from HICKS, and the firearm was carried out of the store by one (1) of the males with her in the same gun box found by BPD six (6) days later.

10. On December 3, 2019, BPD conducted a traffic stop of a vehicle and found SMITH in the passenger's seat with two (2) firearms on his person, the firearms found were not listed on any of the gun boxes found at his apartment. The driver of the vehicle had a suspended license and the vehicle was towed. The vehicle was registered to HICKS. SMITH was arrested for being a felon with a firearm. On December 6, 2019, a search warrant was executed on the vehicle SMITH had occupied. A search of the vehicle uncovered firearm accessories, drug pharaphenalia and methamphetamine.

11. I further reviewed SMITH's criminal history and discovered he had been charged with felony drug charges but convicted of misdemeanors. SMITH was charged with five (5) counts of felony-level, burglary-related charges and agreed to a continuance without a finding (CWOF) and a guilty probation of one (1) year on October 17, 2012. SMITH violated his probation and was convicted of his felonies (crimes punishable by imprisonment for over a year) on July 29, 2013.

12. On February 18, 2020, BPD Detective James Burns and I interviewed a cooperating witness (CW2) about one of the firearms for which a gun box was found in SMITH's room. The CW2 stated he purchased the two (2) firearms at Allsport Performance in

Hermon, Maine on February 26, 2019. The CW2 said he later needed money and sold the firearms to an African American male at 50 State Street in Brewer, Maine. (On February 21, 2020, Brewer Police Department responded to a call for service for a welfare check on Bethany Marycz at 50 State Street. The complainant of the call was Marycz's grandmother who stated Marycz's child told the grandmother that while staying at 50 State Street Marycz's ex-boyfriend, SMITH, had a gun and ammo in a backpack.) The CW2 explained to your Affiant that something "felt off" about the transaction, but was told by a coworker that SMITH could legally own firearms. SMITH attempted to purchase a third firearm from CW2, but the CW2 did not sell the firearm to SMITH after learning SMITH had resold the firearms he purchased a week earlier. CW2 learned about SMITH selling the firearms directly from SMITH himself.

13. While conducting telephone analysis of target phones related to this investigation, DEA discovered through an administrative subpoena that Wayne Smith was listed as the subscriber of Verizon telephone 207-631-1712. SMITH provided his subscriber address as 50 State Street, Brewer, Maine on January 26, 2020 when the telephone was activated.

14. On March 5, 2020, I participated in a proffer interview with a Cooperating Witness (hereinafter, "CW1"). During the interview[1] CW1 said he has known SMITH since 2016. CW1 said since first meeting SMITH he has known him to sell crack cocaine, heroin, methamphetamines, and handguns. CW1 said he assisted SMITH in selling illegal drugs from 40

---

[1] CW1 provided information pursuant to a standard proffer agreement with the United States Attorney's Office, which provided CW1 with direct use immunity for CW1's statements made during the proffer interview. Based on information gathered during the course of this investigation, I believe that CW1 was truthful as to these statements because the information is corroborated, at least in part, by other witnesses or evidence.

Second Street, Bangor, Maine at the end of 2019 and start of 2020. CW1 said SMITH would ask drug users to buy the guns for him. CW1 said he has seen SMITH with up to 13 gun boxes at a time. CW1 said he asked HICKS and her boyfriend to buy a gun for him at SMITH's suggestion. CW1 acquired a handgun from HICKS and approximately a couple weeks later, SMITH ultimately took the firearm. CW1 asked HICKS again to purchase a handgun. CW1 acquired another handgun from HICKS and shortly after sold it to SMITH for approximately $300. CW1 said SMITH would transport the guns to Boston, MA.

15. On January 5, 2020, New Hampshire State Police learned from a drug-related arrest that Danielle MCBREAIRTY was living in Bangor, Maine and was receiving large amounts of illegal drugs originating from the Bronx, NY. On January 6, 2020, DEA ultimately detained Danielle MCBREAIRTY in Portsmouth, NH after a drug transaction. MCBREAIRTY was found with suspected methamphetamine, a scale, a firearm and ammunition.

16. On January 6, 2020, DEA in Bangor, Maine seized several items indicative of drug trafficking and firearms ammunition in MCBREAIRTY's residence after MCBREAIRTY gave consent for agents to search. Agents noted a large gun safe in the bedroom closet of MCBREAIRTY's residence which agents were unsuccessful in opening.

17. On February 12, 2020, DEA in Bangor, Maine interviewed a Carol GORDON, an illegal drug user in the Bangor, Maine area. GORDON stated that SMITH would obtain firearms for drug traffickers in the area. GORDON stated she witnessed the group she buys drugs from talking to SMITH to acquire firearms. According to Bangor Police Department records, officers have responded to drug related calls for service involving GORDON from 2017 up to the present.

18. On February 27, 2020, Maine Drug Enforcement Agency (MDEA) arrested MCBREAIRTY after an illegal drug transaction in Topsham, Maine and found illegal drugs and a handgun.

19. On March 4, 2020, MDEA applied for and received a State of Maine search warrant for MCBREAIRTY's Facebook account. I reviewed communication between MCBREAIRTY and an account bearing the vanity name "Tony WILLIAMS" (wayne.smithrose). I have reviewed the public Facebook profile of the Tony WILLIAMS account and observed the profile photo and know the person to be Wayne SMITH. I have also reviewed other photographs listed in the "Photos" section of the account, many are of the person I know to be Wayne SMITH. I discovered SMITH contacted MCBREAIRTY two days after her arrest via Facebook on February 29, 2020. During the Facebook message conversation MCBREAIRTY said she was concerned that the police would revoke her bail and arrest her. SMITH suggested that she "lay low". MCBREAIRTY continued "I gotta clean my place out look I have some shit ur gonna want". SMITH messaged "Kk so how can I help". MCBREAIRTY messaged "I need you to take those", "Do u have a place for them? They legit on word". SMITH responded "Yes".

20. MCBREAIRTY is known to have firearms in her possession and SMITH is known to possess firearms and move firearms quickly by buying/selling/trading them. Based on my training, experience, and knowledge of this investigation, I believe MCBREAIRTY was looking to have SMITH take the firearms out of her residence in the event that law enforcement came to search her place due to possible violations of her bail conditions.

21. I reviewed the information publicly available for each account and confirmed the usernames associated with the Facebook accounts for "Tony Williams" (user ID

7

wayne.smithrose). On April 1, 2020, I sent a preservation request to Facebook to preserve all information and content associated with the "Tony Williams" account assigned user ID wayne.smithrose.

### FURTHER BACKGROUND AND TRAINING AND EXPERIENCE OF AFFIANT

22. Based on my training and experience, and conversations with other law enforcement agents who have conducted firearms trafficking and controlled substance distribution investigations, I have learned the information contained in the following paragraphs.

23. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

24. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

25. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can

exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

26. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

27. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

28. Facebook allows users to upload photos and videos, which may include metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is

tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

29. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Such messages can include audio/voice messages. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

30. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

31. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present or until the deletion of the account. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

32. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

33. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

34. Facebook also retains IP logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

35. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of services utilized, and the means and source of any payments associated with the services (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical

problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

36. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend

to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

37. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

38. Individuals involved in drug and firearms trafficking use the various Facebook functions to communicate with confederates involved in their drug trafficking activity. Moreover, Facebook accounts also can contain evidence of association between and among those involved in drug trafficking activity, including photographs, "friend" lists, messages, and other content discussed above.

## METHODS TO BE USED TO EXECUTE SEARCH

39. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Upon receipt of the information described in

Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

40. In this case, because Facebook personnel will be assisting in the execution of the search warrant and the search will be no more intrusive at night than during the day, I request that the Court find that there is good cause to execute the warrant during either daytime or nighttime. See Fed. R. Crim. P. 41(e)(2)(a)(ii).

## CONCLUSION

41. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that the Wayne Smith is involved in narcotics and firearms trafficking activity, specifically, violations of Title 21, United States Code, Sections 841(a)(1) (controlled substance offenses) and 846 (conspiracy to commit same), and Title 18, United States Code, Section 922, et seq. (firearms offenses) and Title 18, United States Code, Section 371 (conspiracy). In addition, there is evidence that he is using a Facebook account with the user ID **wayne.smithrose (Tony Williams)** and evidence of these offenses is on the computer systems in the control of Facebook.

*[signature: Justin Blais]*
Justin Blais
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: May 07, 2020

City and state: Bangor, Maine

*[Judge's signature]*
John C Nivison U.S. Magistrate Judge
Printed name and title